ALBERT R. STEVENS *vs.* INHABITANTS OF ANSON.

Cumberland.  Opinion May 29, 1882.

*Town bonds. Municipal aid to railroads. Special laws 1868, c. 622, § 1.*
*R. S., c. 51, § 80.*

Special laws, 1868, c. 622, § 1, which authorized the the town of Anson to raise not exceeding one hundred thousand dollars in aid of the construction of the Somerset railroad, and R. S., c. 51, § 80, which authorizes any town to raise not exceeding five per cent. of its valuation to aid in the construction of railroads, are distinct acts; each stands on its own basis, conferring authority to raise the sum therein named and consistent with each other,

and neither contains any language showing any intention on the part of the legislature to modify or limit either by the other.

By legal votes held at town meetings called for the purpose March 23, 1868, and October 1, 1870, the town of Anson voted to issue not exceeding ninety-five thousand dollars in bonds to aid in the construction of the Somerset railroad, and ninety-two thousand three hundred dollars were issued under those votes; and by legal votes at meetings called for the purpose, November 21, 1874, and June 10, 1875, the same town voted to issue twenty-seven thousand five hundred dollars in bonds to further aid in the construction of the same railroad and the bonds were issued to that amount; the valuation of the town in 1874, was $505,920 and in 1875, $501,476. *Held,* that these several votes were authorized by special laws, 1868, c. 622, § 1, and R. S., c. 51, § 80, and the bonds thus issued are valid and binding on the town.

ON REPORT.

Assumpsit on sundry coupons cut from town bonds, as follows : $396 from bonds issued under vote of March 23, 1868; $90 from bonds issued under votes of October, 1, 1870; and $434 issued under vote of November 21, 1874, and June 10, 1875, in all amounting to $920.

The following are the bonds from which the coupons were taken (one from each series).

"$100.                    State of Maine.                    No. 56.

Loan of town of Anson.

Somerset Railroad.

Be it known that the town of Anson will pay at the treasurer's office in Anson, to the holder of this bond, the sum of one hundred dollars in forty years from the date hereof, and will also pay at the same place the annual coupons hereto attached as the same shall severally become due. Value received. In testimony whereof we, the selectmen and treasurer of said town by virtue of authority conferred by the vote passed at a legal town meeting held therein March 23, A. D. 1868, and by an act of the legislature approved March 6, A. D. 1868, and in conformity thereto, do issue this bond with coupons attached, and have set our hands hereunto, and the treasurer has signed said coupons at said Anson this first day of July, A. D. 1869.

Albert Moore,  ⎫
W. W. Pease,   ⎬  Selectmen.
John M. Hilton. ⎭
        J. A. Fletcher, Treasurer."

In the centre of the above is "$100."

"$100.                    State of Maine.                    No. 142.
                      Loan of town of Anson.
                        Somerset railroad.

Be it known that the town of Anson will pay at the treasurer's office in Anson, to the holder of this bond, the sum of one hundred dollars in forty years from the date hereof, and will also pay at the same place the annual coupons hereto attached as the same shall severally become · due.  Value received.  In testimony whereof we, the selectmen and treasurer of said town, by virtue of authority conferred by the vote passed at a legal town meeting held therein October 1, A. D. 1870, and by an act of the legislature approved March 6, A. D. 1868, and in conformity thereto do issue this bond with coupons attached, and have set our hands hereunto, and the treasurer has signed said coupons at said Anson this first day of October, A. D. 1870.

> Albert Moore,        ⎫
> Mark Emery, Jr.      ⎬  Selectmen.
> John Tinkham.        ⎭
>
>           J. A. Fletcher, Treasurer."

In the centre of the above is "$100."

"$500.                    State of Maine.                    No. 11.
                      Loan of the town of Anson.
                    Eighteen hundred and seventy-four.

Be it known that for value received the town of Anson will pay at the treasurer's office in Anson to the holder of this bond, the sum of five hundred dollars forty years from the date hereof, and will also pay at the same place the semi-annual coupons hereto attached as the same shall severally become due.  In testimony whereof we, the selectmen and treasurer of said town, by virtue of authority conferred by the votes passed at town meetings held therein November 21, 1874, and June 1875, for and in behalf of said town do issue this bond with coupons attached, and have set our hands hereunto, and the treasurer has signed said coupons at said Anson this tenth day of November, A. D. 1875.

> Albert Moore,        ⎫
> H. T. Emery,         ⎬  Selectmen.
> Jesse Hilton.        ⎭
>
>           T. F. Paine, Treasurer."

In the centre of the above is "$500."

The valuation of the town for the year 1868 was $520,990; 1869, $490,760; 1870 and 1871 about the same; 1874, $505,920; 1875, $501,476.

Other material facts stated in the opinion.

*Webb and Haskell*, for the plaintiff, cited: *Lane* v. *Embden*, 72 Maine, 354; *Augusta Bank* v. *Augusta*, 49 Maine, 507; *Deming* v. *Houlton*, 64 Maine, 254.

*J. J. Parlin*, for the defendants, contended that there was no authority for the town to issue the third series of bonds amounting to $27,500 and they were not therefore liable for the coupons taken from those bonds.

At the time of the first action by the town if they relied upon the public law, (stat. 1867, c. 119,) they could only issue about $26,000. If they relied upon special statute (private laws, 1868, c. 622, § 1) they could issue $100,000. They issued $92,300 under the authority, the recitals show, of the special act. They could then at the most only issue $7700 more, yet they did in fact issue bonds for $27,500 and as the recitals in this issue of bonds do not show the authority for the action we are not estopped from denying the authority. Jones on Railroad Securities, § 298; *County Court* v. *Howard*, 13 Bush. (Ky.) 101; *Atchison* v. *Butcher*, 3 Kans. 104; *Marsh* v. *Fulton Co.* 10 Wall. 676. Council further cited: *P. and O. R. R.* v. *Standish*, 65 Maine, 66; *Andrews* v. *Boylston*, 110 Mass. 214; Jones, Railroad Securities, § § 288, 289, 296; *Lewis* v. *Bourbon Co.* 12 Kans. 186.

DANFORTH, J. The coupons upon which this action rests, are cut from three distinct classes of bonds issued under three different votes of the town of Anson, and their validity depends upon the validity of the bonds from which they were taken. There is no question as to the authority of the town to issue the first two series and the votes under which they were issued appear to be in conformity with the law; and if it were otherwise the recitals in the bonds are such as to bring the case within that of *Lane* v. *Embden*, 72 Maine, 354, which must be decisive of it, so far as it depends upon the first and second issues.

The third issue raises a different question and upon these have been the arguments of counsel. These bonds are objected to both upon the want of authority in the town and the invalidity of the vote under which they were issued. In these bonds the only recital we find, is that they were issued "by virtue of authority conferred by the votes passed at town meetings held therein November 21, 1874 and June 1875." Whatever effect this recital may have it leaves the question of authority open to denial by the defendant, and imposes upon the plaintiff the burden of showing that the town was authorized by act of the legislature to issue these bonds. Assuming this duty, the special act of 1868, c. 622, is put into the case and R. S., c. 51, § 80 is cited. The former of these acts authorizes the defendant town to "raise by tax or loan such sums of money as it shall deem expedient not exceeding one hundred thousand dollars, . . and may appropriate the same to aid in the construction of the Somerset railroad." By the latter act "any city or town, by a two-thirds vote, at any legal meeting called for the purpose, may raise by tax or loan . . a sum of money not exceeding in all five per cent. on its regular valuation for the time being and appropriate it to aid in the construction of railroads in such manner as they deem proper." This act with some change in the phraseology was taken from the act of 1867, c. 119, which was in force when the special law of 1868, c. 622 was passed.

The first and second issues amounted to $92,300, but only $80,000 were raised. But whether the authority of the town was exhausted to the extent of the greater or less sum is immaterial now, for in either case neither law alone is sufficient to authorize the additional $27,500, while both of them are sufficient. The first two issues as appears by the bonds themselves derive their validity from the act of 1868. Hence the authority under that act is exhausted certainly not beyond the $92,300, leaving $7,700 still to be raised. Add to this five per cent. of the valuation of the town when the last bonds were issued and we have a larger sum than that covered by the bonds.

There is nothing in the vote or upon the face of the bonds to prevent such addition, for no allusion is made in either to the

statute under which they were issued.  This was not necessary. The special act was made specifically applicable to the town, became a part of its organic law and of which the voters were bound to take the same cognizance in action upon matters to which it related, as of any other law relating to their organization.  Of the public act every person is presumed to have knowledge.  *Canton* v. *Smith*, 65 Maine, 203.

Thus if the two acts were in force as applicable to the town of Anson when the votes to issue the bonds in question were passed, we find sufficient authority for such votes.

It is however, claimed that by the special law of 1868, the public law was so far modified and limited in its effect that it was no longer applicable to the town of Anson.  This view is attempted to be sustained on the ground that the special law authorizes a sum *not exceeding* one hundred thousand dollars, and therefore the five per cent. of the valuation cannot be added to it.  But although the act of 1867 was in force when the special law was enacted it was not so in 1874 when the vote was passed. It had then been repealed and the R. S., c. 51, § 80, had been enacted.  This provides that any town may for railroad purposes raise a sum of money not exceeding *in all* five per cent. of its valuation for the time being.  There is therefore more reason to suppose that the public law had abrogated the private so far as it had not been executed than the reverse.  But neither proposition can be entertained unless we concede that one legislature can bind another, which certainly cannot be admitted except in case of contracts.  It is immaterial whether we consider the public or private law the prior one.  The two are independent acts, each standing upon its own authority, making its own grant, to be executed precisely as if the other had no existence.  It is true a subsequent legislature, with exceptions not material to this case, may modify or repeal the acts of a former.  But no such modification or repeal will be presumed unless necessary, from the inconsistency of the laws, or from language used showing that such was the intention of the legislature.  Here is no such inconsistency.  Both may well stand together and each be executed without interfering with the other; and there is in the one no

allusion to the other, no language tending to show an intention on the part of the legislature that either should affect the other. The words "not exceed the sum" named in the one, and "not exceeding in all the five per cent." in the other, must be construed as having reference to the amount to be raised under the particular law in which they are used. Otherwise they can have no force whatever. If subsequent to the special act of 1868, another act had been passed authorizing the same town in the same language to raise a sum not exceeding one hundred thousand dollars, making no allusion to the former act, it would hardly be contended that the town would be limited to a single sum of one hundred thousand, and not authorized to raise that sum under each. Thus the two may stand together and so standing they give the town the necessary authority to raise all they have done.

It is further objected that it does not appear that the vote was passed by the necessary majority. It is true that under either act the sum to be raised and its appropriation must be determined by a two-thirds vote. At the meeting of November 21, 1874, the record shows a substantially unanimous vote in favor; only two dissenting votes in two hundred and two as the whole number. This vote authorized the sum to be raised, and appropriated "to aid in the construction of the Somerset railroad, by purchasing the first mortgage bonds of the said railroad company, to the amount aforesaid; upon condition that said railroad crosses the Kennebec river between Madison and Anson as at present located." The remaining conditions refer to the time of issuing, rate of interest, and at what price to be sold. Here is but one condition precedent, that of the place where the road shall cross the river, to the raising and appropriating the money. The vote of June, 1875, made some alterations in the former vote, one only in the condition precedent, the remainder in the other conditions and none in the vote to raise and appropriate, or in the manner of appropriation. The change in the location, as appears by the records, was made by the necessary two-thirds vote. Thus the amount to be raised, the appropriation and the manner of appropriation, with the conditions on which this was to be done, all and each had the required sanction of a two-thirds vote. This is all

that is required under the case cited of the *P. & O. R. R. Co.* v. *Standish*, 65 Maine, 66.

Whether the other alterations including that of interest, had a two-thirds vote in their favor does not certainly appear. An inference may be drawn that they did from the fact that all seem to have been passed as one vote and the statement of the fact as to the majority may easily have been put in, in the wrong place. But whether so or not is immaterial. The case finds that the road crossed the river at the required place. The rate of interest certainly does not require a two-thirds vote, nor as it would seem do the other conditions. But however this may be it was by a two-thirds vote made the especial duty of the selectmen to issue and dispose of the bonds at the time and in the manner authorized by the vote. They have done so with the recital that it was done by "virtue of the authority conferred by the votes" specified. If the selectmen were not made the judges as to the authority by which the votes were passed, they were as to the times when they should be issued and whether the conditions as to the time of issuing had been fulfilled.

The exchange of the town bonds for those of the railroad company can be no objection to their validity. The purchase of railroad bonds was not the object in view. This exchange was, or was supposed to be, an aid, and the taking of railroad bonds in payment, or as security, was no more objectionable than to have taken the stock for the same purpose.

There must be judgment for the plaintiff for the amount of the coupons, nine hundred and twenty dollars and interest, before the date of the writ as agreed in the report, five dollars and eighty-three cents, making nine hundred and twenty-five dollars and eighty-three cents, and interest from the date of the writ.

> *Judgment for the plaintiff for $925.83*
> *and interest from date of the writ.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and SYMONDS, JJ., concurred.